# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **MICHAEL GRIFFIN,** | Case No. 2:21-CV-01000 |
| Plaintiff, | |
| | Judge |
| v. | |
| **INSTANT BRANDS, INC.,** | |
| Defendant. | |

      **COMES NOW** the Plaintiff, **MICHAEL GRIFFIN** (hereafter referred to as "Plaintiff"), by and through the undersigned counsel **KITRICK, LEWIS & HARRIS CO., LPA** and **JOHNSON BECKER, PLLC**, and alleges the following:

## NATURE OF THE ACTION

      1.     Defendant Instant Brands designs, manufactures, markets, imports, distributes and sell a wide-range of consumer kitchen products, including the subject "Instant Pot Programmable Electric Pressure Cooker," which specifically includes the Model Number IP-DUO80 (referred to hereafter as "pressure cooker(s)") that is at issue in this case.

      2.     Defendant touts the "safety"[1] of its pressure cookers, and states that they cannot be opened while in use. Despite Defendant's claims of "safety," it designed, manufactured, marketed, imported, distributed and sold, both directly and through third-party retailers, a product that suffers

---

[1] *See*, e.g. Instant Pot IP-DUO 60/80 Owner's manual, pgs. 4, 5, 9. A copy of the Owner's manual is attached hereto as "Exhibit A".

from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to its consumers.

3. Specifically, said defects manifest themselves when, despite Defendant's statements, the lid of the pressure cooker is removable with built-up pressure, heat and steam still inside the unit. When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families and other bystanders. The Plaintiff in this case was able to remove the lid while the pressure cooker retained pressure, causing him serious and substantial bodily injuries and damages.

4. Defendant knew or should have known of these defects, but has nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like him.

5. Defendant ignored and/or concealed its knowledge of these defects in its pressure cookers from the Plaintiff in this case, as well as the general public, in order to continue generating a profit from the sale of said pressure cookers, demonstrating a callous, reckless, willful, and depraved indifference to the health, safety and welfare of Plaintiff and consumers like him.

6. As a direct and proximate result of Defendant's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, lost wages, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF MICHAEL GRIFFIN

7. At all times relevant, Plaintiff was and is a citizen and resident of the City of Columbus, County of Franklin, State of Ohio.

8. In or around 2018, Plaintiff received a new pressure cooker, Model No. IP-DUO80.

9. On or about March 24, 2019, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid being able to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed use of the Pressure Cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff. The incident occurred as a result of the failure of the pressure cooker's supposed "safety mechanisms,"[2] which purport to keep the consumer safe while using the pressure cooker. In addition, the incident occurred as the result of Defendant's failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## INSTANT BRANDS, INC.

10. Defendant designs, manufactures, markets, imports, distributes and sells a variety of consumer kitchen products including pressure cookers, air fryers, and blenders, amongst others.

11. Defendant boasts that "[t]he Instant Pot line of products are truly tools for a new lifestyle and especially cater to the needs of health-minded individuals"[3] with its "main goal" to provide the "best kitchen experience by offering unsurpassed user interface design and connected technologies."[4]

---

[2] *Id.* at pg. 5.
[3] *See* https://instantpot.com/about-instant-brands-inc-instant-pot/ (last accessed February 23, 2021)
[4] *Id.*

3

12. Defendant Instant Brands is a Canadian corporation with is principal place of business at 495 March Road, Suite 200, Kanata, ON, Canada K2K 3G1, and as such is deemed to be a citizen of the Country of Canada.

13. Upon information and belief, prior to March 8, 2018, Defendant Instant Brands was known as "Double Insight, Inc. d/b/a The Instant Pot Company", and have each held themselves out as the designers, manufacturers, and/or distributors of the Instant Pot.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

16. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has sufficient minimum contacts with the State of Maryland and intentionally availed itself of the markets within Maryland through the promotion, sale, marketing, and distribution of its products.

**FACTUAL BACKGROUND**

17. Defendant is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the pressure cookers at issue in this litigation.

18. Defendant aggressively warrants, markets, advertises and sells its pressure cookers as "Convenient, Dependable and Safe," [5] allowing consumers to cook "healthy, tasty dishes."[6]

---

[5] *See* https://instantpot.com/portfolio-item/lux-6-quart/#tab-id-1 (last accessed September 25, 2019).
[6] *Id.*

4

19. For instance, the Defendant claims "As a safety feature, the lid is locked and cannot be opened until the float valve drops down." [7]

20. To further propagate its message, Defendant has, and continue to utilize numerous media outlets including, but not limited to, infomercials, social media websites such as YouTube, and third-party retailers. For example, the following can be found on Defendant's YouTube webpage entitled "Getting to Know Your New Instant Pot IP-DUO":

   a. "The first thing you need to know about your IP-DUO is that *you don't need to be afraid of it*, as many people are afraid of stovetop pressure cookers."[8]

   b. "With 10 safety features built in, you can use your Instant Pot with confidence, *knowing that it is not going to explode*." [9]

   c. "In addition, keep in mind that your Instant Pot operates at relatively low pressures of 11 to 12 psi or lower, depending on the pressure setting that you use." [10]

21. In a similar video entitled "Introducing Instant Pot IP-DUO series electric pressure cooker," spokesperson Laura Pazzaglia, founder of the website "Hip Pressure Cooking"[11] boasts of the pressure cookers "10 safety features,"[12] stating that this "new model detects the position of the lid"[13] and "once the lid is locked, and the contents are under pressure, *there's no way to open the pressure cooker*."[14]

---

[7] Instant Pot IP-DUO 60/80 Owner's manual, pg. 9.
[8] https://www.youtube.com/watch?v=w1RKj9E8TY0 (video with a runtime of 11:26) at 0:42 – 0:46 (last accessed February 23, 2021)
[9] *Id.* at 0:47 – 0:55.
[10] *Id.* 0:56 – 1:08. This apparently suggests that even if the lid is opened while the unit is still pressurized, it will not harm you.
[11] *See* https://www.hippressurecooking.com/ (last accessed February 23, 2021)
[12] *See* https://www.youtube.com/watch?v=bVA2EqPf0s0 at 1:22 – 143. (last accessed February 23, 2021)
[13] *Id.* at 2:26
[14] *Id.* at 6:40

22. According to the Owner's Manual accompanying each individual unit sold, the pressure cookers purport to be designed with "10 proven safety mechanisms and patented technologies,"[15] misleading the consumer into believing that the pressure cookers are reasonably safe for its normal, intended use.

23. By reason of the forgoing acts or omissions, the above-named Plaintiff and/or his family purchased the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

24. Plaintiff used his pressure cooker for its intended purpose of preparing meals for himself and/or family and did so in a manner that was reasonable and foreseeable by the Defendant.

25. However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by the Defendant in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, his family, and similar consumers in danger while using the pressure cookers.

26. Defendant's pressure cookers possess defects that make them unreasonably dangerous for its intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

27. Further, Defendant's representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

---

[15] *See* Instant Pot IP-DUO 60/80 Owner's manual, pg. 4.

28. Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

29. Defendant knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public. Nevertheless, Defendant continues to ignore and/or conceal its knowledge of its pressure cookers' defects from the general public and continues to generate a substantial profit from the sale of its pressure cookers.

30. As a direct and proximate result of Defendant's intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries upon Plaintiff's simple removal of the lid of the Pressure Cooker.

31. Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendant's pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, lost wages, physical pain, mental anguish, diminished enjoyment of life, and other damages.

**CAUSES OF ACTION**

**CAUSES OF ACTION I – IV**
**DEFECTIVE MANUFACTURING/CONSTRUCTION**
**DEFECTIVE DESIGN/FORMULATION**
**DEFECTIVE WARNING/INSTRUCTION**
**DEFECTIVE DUE TO NONCONFORMITY WITH REPRESENTATION**
**STRICT LIABILITY**
**Pursuant to ORC § 2307.71** *et seq.*

32. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

33. At the time of Plaintiff's injuries, Defendant's pressure cookers, including the subject pressure cooker, were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

34. The subject pressure cooker was in the same or substantially similar condition as when it left the possession of the Defendant.

35. Plaintiff did not misuse or materially alter the subject pressure cooker.

36. The subject pressure cooker did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

37. Defendant knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendant continued to market (and continues to do so) its pressure cookers to the general public.

38. The Plaintiff in this case reasonably relied on Defendant's representations that its pressure cookers, including the subject pressure cooker, were a safe and effective means of preparing meals.

39. Defendant's pressure cooker is defective in design or formulation. R.C. 2307.75.

40. Defendant's pressure cooker is defective due to inadequate warning or instruction. R.C. 2307.76.

41. Defendant's pressure cooker is defective for failing to conform to a representation made by the manufacturer. R.C. 2307.77.

42. Defendant is, or may be, liable as a supplier. R.C. 2307.78.

43. The defective condition of the subject pressure cooker includes, *inter alia,* the following:

   a. The subject pressure cooker designed, manufactured, sold, and supplied by Defendant was defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

   b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

   c. Defendant failed to properly market, design, manufacture, distribute, supply, and sell the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker, despite having extensive knowledge that the aforementioned injuries could and did occur;

   d. Defendant failed to use due care in designing and manufacturing the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker to avoid the aforementioned risks to individuals;

   e. Defendant failed to warn and place adequate warnings and instructions on the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker;

   f. Defendant failed to adequately test the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker;

   g. Upon information and belief, Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages; and

   h. Upon information and belief, Defendant also failed to disclose material facts regarding the safety and efficacy of the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker, including information regarding their propensity to cause personal injuries.

44. Defendant's pressure cooker was defective in that at the time the subject pressure cooker left the control of Defendant, the foreseeable risks associated with its design or formulation exceeded the benefits associated with that design or formulation.

45. The subject pressure cooker did not conform to the standards of similar or identical pressure cookers due to its propensity for the lid to be removed while the unit remains under pressure

46. The propensity for the lid to be removed while the unit remains under pressure during its normal, foreseeable use, was not an open and obvious risk.

47. The subject pressure cooker was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to its users and, in particular, Plaintiff.

48. The Defendant in this case had a duty to provide Plaintiff and other consumers with true and accurate information and warnings of any known dangers of the pressure cookers it marketed, distributed and sold.

49. The Defendant in this case knew or should have known, based on prior experience that its representations regarding its pressure cookers were false, and that it had a duty to disclose the dangers associated with their pressure cookers.

50. As a direct and proximate result of Defendant's defective pressure cooker, the Plaintiff in this case suffered significant, painful and permanent bodily injuries, physical pain, mental anguish, medical expenses, and overall diminished enjoyment of life. The Defendant in this case is liable for these losses.

**CAUSE OF ACTION V**
**NEGLIGENCE**

51. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

52. Defendant owed a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff.

53. Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its pressure cookers in that Defendant knew or should have known that said pressure cookers, including the subject pressure cooker, created a high risk of unreasonable harm to the Plaintiff and consumers alike due to their propensity for the lid to be removed while the unit remains under pressure.

54. The Defendant in this case was negligent in the design, manufacture, advertising, warning, marketing, and sale of their pressure cookers, including the subject pressure cooker in that, *inter alia*, they:

   a. Failed to properly market, design, manufacture, distribute, supply, and sell the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker, despite having extensive knowledge that the aforementioned injuries could and did occur;

   b. Failed to warn and place adequate warnings and instructions on the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker;

   c. Failed to adequately test the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker;

   d. Failed to use due care in designing and manufacturing the subject pressure cooker, including pressure cookers similar or identical to the subject pressure cooker to avoid the aforementioned risks to individuals;

   e. Placed an unsafe product into the stream of commerce;

   f. Were otherwise careless or negligent.

55. As a direct and proximate result of Defendant's negligence, the Plaintiff in this case suffered significant, painful and permanent bodily injuries, physical pain, mental anguish, medical expenses, and overall diminished enjoyment of life. The Defendant in this case is liable for these losses.

## CAUSE OF ACTION VI
## BREACH OF IMPLIED WARRANTIES

56. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

57. Defendant manufactured, supplied, and sold their pressure cookers, including the subject pressure cooker, with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently and safely preparing meals.

58. Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of these warranties.

59. Defendant's pressure cookers, including the subject pressure cooker, were not fit for the particular purpose as a safe means of cooking meals, due to the unreasonable risks of bodily injury associated with their use.

60. Furthermore, Defendant's pressure cookers, including the subject pressure cooker, were not merchantable and fit for their ordinary purpose, because they have the propensity for the lid to be removed while the unit remains under pressure.

61. The Plaintiff in this case reasonably relied on Defendant's representations that their pressure cookers, including the subject pressure cooker, were fit for the particular purpose of cooking quickly, efficiently, and safely.

62. Additionally, Plaintiff used the subject pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking quickly, efficiently and safely.

63. As a direct and proximate result of Defendant's breach of the aforementioned warranties, the Plaintiff in this case suffered significant, painful and permanent bodily injuries,

physical pain, mental anguish, medical expenses and overall diminished enjoyment of life. The Defendant in this case is liable for these loses.

64. As a direct and proximate result of Defendant's negligence and wrongful misconduct as described herein, Plaintiff has suffered and will continue to suffer physical and emotional injuries and damages including past, present, and future physical and emotional pain and suffering as a result of the incident on or about March 24, 2019. Plaintiff is entitled to recover damages from Defendant for these injuries in an amount which shall be proven at trial.

65. As a direct and proximate result of Defendant's negligence and wrongful misconduct, as set forth herein, Plaintiff has incurred and will continue to incur the loss of full enjoyment of life and disfigurement as a result of the incident on or about March 24, 2019. Plaintiff is entitled to recover damages for loss of the full enjoyment of life and disfigurement from Defendant in an amount to be proven at trial.

66. As a direct and proximate cause of Defendant's negligence and wrongful misconduct, as set forth herein, Plaintiff has incurred expenses for medical care and treatment in the amount of $1,760.55, as well as other expenses, as a result of the severe burns he suffered as a result of the incident on or about March 24, 2019. Plaintiff is entitled to recover damages from Defendant medical care and other expenses in an amount which shall be proven at trial.

## **JURY TRIAL DEMANDED**

Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendant as follows:

A. For an award of compensatory damages, including damages against Defendant and each of them for pain and suffering, medical and hospital expenses, loss of income, permanent disability, and other damages according to proof at trial in excess of $75,000;

B. For reasonable attorneys' fees and costs;

C. For pre-judgment interest;

E. Restitution, disgorgement of profits, and other equitable relief; and

F. For such further relief as this Court deems necessary, just, equitable and proper.

Dated: March 10, 2021            Respectfully Submitted,

*/s/ Mark M. Kitrick, Esq*
Mark M. Kitrick, Esq. (0000021)
Sean Harris, Esq. (0072341)
KITRICK, LEWIS & HARRIS CO., LPA
445 Hutchinson Avenue, Suite 100
Columbus, OH 43235-8630
Tel: 614.224.7711 | 866.227.7711
Fax: 614.225.8985
Email: mkitrick@klhlaw.com
        sharris@klhlaw.com

*In association with:*

*/s/ Adam J. Kress*
Adam J. Kress, Esq. (0397289)
*Admission Pro Hac Vice to be filed*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Tel (612) 436-1800
Fax (612) 436-1801 (fax)
Email: akress@johnsonbecker.com

*Counsel for Plaintiff*

14